**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL BURGO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-3187** |
| | : | |
| **BOULEVARD AUTOGROUP, LLC** | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                              **August 1, 2024**

Seventy-year-old Michael Burgo sued his former employer car dealership last August for age discrimination through disparate treatment in firing him and hostile work environment based on his age. The jury found Mr. Burgo did not prove the dealership fired him in June 2020 and so he could not recover on his disparate treatment theory. But the jury also found the car dealership subjected Mr. Burgo to discrimination through a hostile work environment because of his sixty-seven years of age. The jury awarded $625,000.01 in compensatory damages.

Mr. Burgo now moves for attorneys' fees and costs under both Pennsylvania and federal law. The dealership counters we should halve the fees because Mr. Burgo succeeded on one of his two discrimination claims. The dealership also challenges identified billed time and certain costs. We overrule its objections to most of the fees given the adduced trial evidence confirming the intertwined nature on his two age discrimination theories based on largely the same facts but discount the requested fees by four percent to account for work focusing on whether the dealership fired Mr. Burgo during a June 22, 2020 meeting. We overrule objections to identified time entries and costs other than not approving paying for a Philadelphia trial lawyer's two-night stay in a hotel closer to the courthouse than his office twelve blocks away. We order the dealership pay $298,958.06 in reasonable attorney fees and $28,902 to reimburse for reasonable and necessary costs.

## I.      Facts material to the objections to requested fees and costs.

Michael Burgo returned to work for Gary and Eugene Barbera in 2018 as Boulevard Autogroup, LLC's general manager after earlier working for Gary Barbera for ten years. The adduced evidence confirmed Gary Barbera directed age-based insults at Mr. Burgo during Mr. Burgo's 2018-2020 tenure at Boulevard. Mr. Burgo worked at Boulevard until he walked out of a June 22, 2020 Culture Club Meeting after he viewed Gary Barbera's age insults as too much to bear. He did not return to work. He thought Boulevard (through Gary Barbera) fired him. Boulevard thought he quit. Facts pointed both ways.

Mr. Burgo hired The Gold Law Firm, P.C. on July 13, 2020 on a contingency fee basis.[1] The law firm founder and senior Attorney Sidney Gold forwarded a July 29, 2020 Charge of Discrimination dual-filed with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission to the Legal Department of Gary Barbera Enterprises, Inc. on August 5, 2020.[2] The Equal Employment Opportunity Commission issued a Right to Sue letter on July 19, 2023. The firm does not request the fees and costs accrued between July 13, 2020 until it assigned an attorney to represent Mr. Burgo in mid-April 2023.[3]

The Gold Law Firm assigned its partner Brian C. Farrell as lead counsel for Mr. Burgo in mid-April 2023 as reflected on its first April 19, 2023 billing entry shown to us.[4] Attorney Farrell has nearly ten years' experience as an employment lawyer and bills at a $415.00 hourly rate. Attorney Farrell invested 550.91 hours representing Mr. Burgo beginning on April 19, 2023. Attorney Farrell reviewed Mr. Burgo's administrative file, Charge, and Right to Sue notice. He discussed the filings with Mr. Burgo, reviewed Mr. Burgo's documents, and drafted Mr. Burgo's Complaint filed here in August 2023. Attorney Farrell later met with Mr. Burgo and discussed discovery, drafted Mr. Burgo's written discovery requests, drafted the Rule 26f Report and

participated in our pretrial conference, contacted and retained damages expert Andrew Verzilli, drafted deposition subpoenas, drafted and filed a Motion to compel discovery, deposed one former Boulevard Autogroup employee Brian Gutierrez and prepared for and participated in three Boulevard Autogroup employees' depositions, prepared for and participated in Gary Barbera's deposition, and participated in settlement conferences before Judge Hey.

The Gold Law Firm later assigned its partner William Rieser as an additional counsel to Mr. Burgo in February 2024 once it appeared Mr. Burgo's case would proceed to trial in April 2024.[5] Attorney Rieser has nearly thirteen years' experience as an employment lawyer and bills at a $525 hourly rate. Attorney Rieser invested 130.7 hours representing Mr. Burgo beginning on February 8, 2024. Attorneys Farrell and Rieser reviewed Boulevard Autogroup's Motion for summary judgment. Attorneys Farrell and Rieser held internal conferences to discuss the summary judgment opposition and Motions *in limine*. Attorney Farrell drafted Mr. Burgo's trial exhibit list, pretrial memorandum, and Motions *in limine*. Attorneys Farrell and Rieser jointly drafted and billed for Mr. Burgo's *voir dire*, jury instructions, and verdict slip.

Firm founder and senior Attorney Sidney L. Gold invested 16.67 hours representing Mr. Burgo. Attorney Gold bills at an $850 hourly rate. Attorney Gold began practicing law nearly fifty years ago. Attorney Gold participated in internal conferences with Attorneys Farrell and Rieser at certain flashpoints in Mr. Burgo's litigation including after Boulevard Autogroup moved for summary judgment, strategies concerning Mr. Burgo's and Boulevard Autogroup's Motions *in limine*, following each day of Mr. Burgo's trial, and reviewing Mr. Burgo's post-trial motions.

We held an initial pretrial conference with the parties on November 15, 2023. Neither side mentioned a need for different proofs on the disparate treatment or hostile work environment ager discrimination claims. The parties proceeded to fact and expert discovery. Attorney Farrell moved

to compel Boulevard to respond to written discovery requests and confirm deposition availability for fact witnesses working for Boulevard.

The parties jointly moved to amend the summary judgment deadline to allow for a more fulsome settlement discussion before Judge Hey. Boulevard then moved for summary judgment on both of Mr. Burgo's age discrimination claims. Boulevard did not argue different facts or offers of proof apply to the disparate treatment and hostile work environment claims. We denied summary judgment on March 11, 2024. We found fact issues concerning whether Boulevard fired Mr. Burgo and whether a reasonable jury could find Gary Barbera's comments to be severe or pervasive. The parties prepared for our long-scheduled April 10, 2024 jury trial. [6]

### Attorneys Farrell and Rieser bill time preparing for witnesses to the June 22, 2020 Culture Club meeting.

The proofs largely focused on whether Mr. Burgo worked in a hostile work environment based on his age leading to Boulevard's final step of firing him at a June 22, 2020 regular Culture Club meeting managed by Gary Barbera with several Boulevard employees attending. The parties needed to discover the evidence concerning alleged age-based insults by Gary Barbera. Boulevard offered Sales Manager John Roa and Pre-owned Automobile Manager Joseph Sadusky as fact witnesses to the June 22, 2020 Culture Club meeting. Boulevard also offered Pre-owned Automobile Manager Sadusky as a fact witness for the disparate treatment claim. [7] Neither Sales Manager Roa nor Pre-owned Automobile Manager Sadusky testified at trial.

Attorney Farrell billed 6.2 hours preparing for and taking Sales Manager Roa's deposition. Attorney Farrell's time entry preparing for and taking Sales Manager Roa's deposition also includes time billed responding to Boulevard's written discovery requests. Boulevard appended Sales Manager Roa's deposition to its summary judgment motion. [8] Sales Manager Roa's deposition totaled one hour and fifteen minutes and focused on the June 22, 2020 meeting.

Attorney Farrell billed 9.10 hours on April 1, 2024 drafting Sales Manager Roa's cross-examination outline, among other tasks. Attorney Farrell billed 10.00 hours on April 2, 2024 drafting Sales Manager Roa's cross-examination outline, among other tasks. Attorney Farrell billed 14.00 hours on April 11, 2024, the first day of trial, to editing a cross-examination outline for Sales Manager Roa, among other tasks. Attorney Rieser billed 7.10 hours on April 4, 2024 reviewing a cross-examination outline for Sales Manager Roa, among other tasks. Attorney Rieser billed 10.00 hours on April 9, 2024 reviewing a cross-examination outline for Sales Manager Roa, among other tasks.

### Attorneys Farrell and Rieser divide pretrial and trial responsibilities.

Attorney Farrell began preparing for trial on March 29, 2024. Attorney Farrell drafted Mr. Burgo's opening statement and Mr. Burgo's direct examination over four days. Attorney Farrell also drafted and billed for cross-examination outlines for Gary Barbera, Dan Stuhl, and Sales Manager Roa, and correspondence with Damages Expert Verzilli to request an amended expert report. Attorney Farrell broadly billed for "trial preparation" from March 29, 2024 through April 3. 2024.

Attorney Rieser began preparing for trial on March 26, 2024. Attorney Rieser drafted cross-examination for Gary Barbera over several days. Attorney Rieser also drafted an outline for Mr. Burgo's closing argument.

Attorneys Farrell and Rieser met with Mr. Burgo on April 9, 2024 and conducted mock direct and cross-examination with Mr. Burgo. Attorneys Farrell and Rieser held an internal conference to discuss trial strategy on April 10, 2024. Attorney Farrell continued outlining Mr. Burgo's closing argument. Attorney Rieser continued reviewing and editing examination outlines for Mr. Burgo and several Boulevard Autogroup employees.

We proceeded to trial with Attorney Farrell serving as lead trial counsel and Attorney Rieser as associate trial counsel. Attorneys Farrell and Rieser billed for and participated in the first two days of Mr. Burgo's trial. Attorneys Farrell, Rieser, and Gold met over the weekend following the trial's second day to discuss strategy and prepare for our charging conference. Attorneys Farrell and Rieser billed for and participated in the third and final trial day.

Attorney Farrell submits three-time entries related to trial. Attorney Farrell billed 14 hours for trial on April 11 (the first day of trial), 14 hours for trial on April 12 (the second day of trial), and 12 hours for trial on April 15 (third and final day of trial). Attorney Farrell also requests costs for a two-night hotel stay near the Courthouse during trial even though his office is approximately twelve blocks from the Courthouse and he offers no basis to find he could not commute to his office during the three day trial. Attorney Rieser submits three time entries related to trial. Attorney Rieser billed 10 hours for trial on April 11 (the first day of trial), 14 hours for trial on April 12 (the second day of trial), and 12 hours for trial on April 15 (third and final day of trial).

The jury heard extensive evidence at trial of Gary Barbera's age-based insults directed at Mr. Burgo during Mr. Burgo's tenure at Boulevard. This evidence included the Gary Barbera and Mr. Burgo's verbal altercation at the June 22, 2020 Culture Club meeting and Mr. Burgo leaving the dealership. Mr. Burgo adduced evidence he believed Gary Barbera fired him at the June 22, 2020 Culture Club meeting. Boulevard adduced evidence Gary Barbera believed Mr. Burgo quit by walking out of the meeting. The jury also heard limited evidence Mr. Burgo communicated with Gary Barbera's brother Eugene, Boulevard's head Human Resources professional, and Boulevard's Chief Financial Officer following the June 22, 2020 meeting and expressed he did not resign from his position.

6

The jury returned a verdict in favor of Boulevard on Mr. Burgo's claim of disparate treatment claim. The jury found Boulevard did not fire Mr. Burgo. The parties agreed he could not recover on the disparate treatment claim absent being fired (an adverse employment action).[9] But the jury found in favor of Mr. Burgo on his hostile work environment age discrimination claim. The jury awarded Mr. Burgo $625,000.01 in compensatory damages on his hostile work environment age discrimination claim.[10]

## II.    Analysis

Mr. Burgo now moves for an award of his reasonable attorney's fees and costs incurred in securing the jury's award $625,000.01 in compensatory damages after finding age discrimination based on Boulevard maintaining a hostile work environment based on age. He seeks reimbursement of $311,414.65 in attorney's fees and $30,055.32 in costs.

We employ the lodestar formula to calculate attorney's fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, which is presumed to be a reasonable fee.[11] We approach this fee request by asking whether: Mr. Burgo is the prevailing party; if so, setting the reasonable hours multiplied by a reasonable rate; and then, consider other factors allowing us to adjust the award. Boulevard focuses on whether Mr. Burgo is the prevailing party by asking us to halve the fee request to account for success on one of his two theories. And it then challenges the reasonableness of broadly identified hours and specific costs. We find the fees are reasonable given the nature of the interrelated proof on age discrimination as to most of the work except for the limited evidence relating to the specifics of Mr. Burgo's departure from the June 22, 2020 Culture Club meeting and conduct thereafter addressing whether he quit rather than Boulevard firing him. We sustain Boulevard's objections to the hotel charge but otherwise find the billed time and costs to be reasonable.

Mr. Burgo proceeded on two theories of liability. Each allow an award of a reasonable attorney's fee if successful. Congress, through the Age Discrimination in Employment Act incorporates Section 216(b) of the Fair Labor Standards Act and provides we "shall, in addition to any judgment awarded to the plaintiff …, allow a reasonable attorney's fee … and costs."[12] An award of attorney's fees is also discretionary under the Pennsylvania Human Relations Act.

Mr. Burgo's two theories of age discrimination have a significant overlap in proofs relating to the hostile work environment based on age in the dealership. But the disparate treatment theory relates entirely to how Mr. Burgo left the June 22, 2020 Culture Club meeting as it affects the jury's decision whether Boulevard fired him or, as the jury apparently found, Mr. Burgo left and did not return.

A.  **We overrule Boulevard's objection to the fee award based on success on one of two theories of age discrimination.**

Boulevard asks we halve all requested fees to account for Mr. Burgo's success on only one of his two age discrimination theories. We overrule this objection in large part but discount the fee request by four percent to account for billed work relating to the last short interaction between the parties on June 22, 2020 and thereafter involving Mr. Burgo's departure from the dealership property.

Boulevard argues Mr. Burgo obtained no damages under federal law.[13] Nothing on the verdict sheet approved by counsel distinguishes between the federal and Pennsylvania claims.[14] The verdict sheet only asks the jury if Mr. Burgo proved Boulevard fired him; the parties did not ask to mention a particular statute.[15] Boulevard contends Mr. Burgo "can only receive an award of fees and costs pursuant to the discretionary standard" under Pennsylvania Law.[16]

Congress and the Pennsylvania General Assembly both prohibit employers from creating hostile work environments related to age discrimination.[17] They both provide for the recovery of

8

attorneys' fees and costs.[18] But the fee-shifting provisions of federal law are mandatory and the award is discretionary under Pennsylvania Law.[19] The Pennsylvania fee-shifting provisions are discretionary.[20] And Congress, through the Age Discrimination in Employment Act differs from Pennsylvania Law by excluding compensatory damages as a remedy.[21] So the jury's award of compensatory damages must be under Pennsylvania Law.

Boulevard asks we exercise the discretion under Pennsylvania Law and reduce the requested fees by fifty percent to account for the jury finding Mr. Burgo did not prove one of his two age discrimination theories. It relies on the Supreme Court's analysis in *Hensley v. Eckerhart* to argue we must reduce the requested attorneys' fees and costs.[22] Mr. Burgo disagrees but does not object to review under Pennsylvania's discretionary standard.

The Supreme Court in *Hensley* directed the degree of success is "the most critical factor" in determining an appropriate attorney's fee award.[23] "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."[24] The Supreme Court in *Hensley* requires we ask two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[25] The Court recognized a plaintiff in one case "may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" while, in another case, such as civil rights cases, "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation."[26] The Court recognized where a plaintiff obtained "excellent results, his attorney should recover a fully compensatory fee," normally encompassing "all hours reasonably expended on the litigation" and, "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in his lawsuit…. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."[27] To that end, the Court held "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from this successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee" but "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[28]

We are also guided by Judge Quinones's analysis last month in *American Institute for Chartered Property Casualty Underwriters v. Posner*.[29] Judge Quinones opined we are not required to reduce the attorneys' fees, but if we do, we must not do so for some ratio between the award and the fees.[30] It must be on other grounds, such as a reduction in the hours because of the degree of success or because of duplicative or otherwise unreasonable hours.[31] And work on unsuccessful claims cannot be used as a basis for the attorneys' fees.[32] But we agree with Judge Quinones there is no definite method of determining the relatedness of the claims.[33] These questions are fact-dependent left to the trial judge witnessing the work effort and trial presentations. "This determination is of 'critical importance' because '[t]he District Court must ensure that a partially successful defendant is not required to provide compensation for an attorney's unrelated efforts on behalf of an unsuccessful plaintiff, or in pursuit of the unsuccessful claims of an only partially victorious plaintiff . . . .'." [34]

We are also guided in part by Judge Brody's analysis in *McGuffey v. Brinks, Inc.* discounting the fees by ten percent.[35] Judge Brody dismissed the employee's federal and Pennsylvania claims of discrimination and retaliation on summary judgment "closely related" to the employee's later successful retaliation claim.[36] Answering the first *Hensley* question, Judge Brody found the successful and unsuccessful claims "all involved similar legal theories" under federal and Pennsylvania Law, the "hours expended researching those laws and arguing those theories normally were devoted generally to [federal and Pennsylvania] claims," and the claims "involved a common core of facts" because the employer offered the same explanation for its challenged conduct.[37] Applying the second *Hensley* question, Judge Brody found the employee's success incomplete because the jury did not find the employer liable for age discrimination, but recognized the jury awarded $170,000 award on his retaliation claim.[38] Judge Brody applied a ten percent reduction to the lodestar to compensate for "limited success."[39]

We begin with the jury awarding all the compensatory damages which it believed Mr. Burgo proved on his hostile work environment theory of age discrimination. The Supreme Court in *Hensley* instructs "the result is what matters." Mr. Burgo achieved excellent results on the hostile work environment theory. We find no basis to deny the fees for work performed to obtain the verdict on the hostile work environment theory. The issue presented by Boulevard then becomes what portion of the billed fees relates to work on the disparate treatment theory of age discrimination (as separate from the hostile work environment theory) and specifically whether Boulevard fired Mr. Burgo at the June 22, 2020 Culture Club meeting.

Applying the first of the Supreme Court's two *Hensley* questions, we ask whether Mr. Burgo's unsuccessful disparate treatment theory is "unrelated" to the successful hostile work environment theory. Boulevard argues the disparate treatment/firing theory is distinct from the

hostile work environment theory. We see its point to an extent. Mr. Burgo adduced evidence of a hostile work environment based on age leading him to decide to leave the June 22, 2020 Culture Club meeting. The jury found he decided to not come back to work. It found Boulevard did not fire him. But the two age discrimination theories involve a both a common core of facts and the same exact evidence up to the June 22, 2020 meeting is at issue in both. The only difference may relate to testimony about what happened during the June 22, 2020 Culture Club meeting. The facts preceding Mr. Burgo's separation from Boulevard are the same arising from the same core conduct.

Mr. Burgo would need to develop at trial the factual context of his departure even if he did not claim a disparate treatment/adverse employment theory based on his departure from the Culture Club meeting. Boulevard defended the age discrimination claim on both theories on the same basis: "it did not happen." It argued no continual hostile treatment and then argued Gary Barbera did not fire Mr. Burgo at the Culture Club meeting. Mr. Burgo's counsel's efforts focused on months of harassment. The short Culture Club meeting is a limited part of the proofs and counsel's work.

The second *Hensley* question asks whether Mr. Burgo achieved a level of success making the hours reasonably expended a satisfactory basis for making a fee award. The jury awarded damages to Mr. Burgo on his hostile work environment theory of age discrimination. Mr. Burgo did not succeed on both theories. Our verdict slip approved by the parties required the jury to separately answer whether Boulevard fired Mr. Burgo. Counsel recognized the separate nature of the adverse employment question in the disparate treatment theory. We cannot speculate whether a jury would have awarded him more damages if the jury found Boulevard fired Mr. Burgo and then found discrimination. The jury did not find Boulevard fired Mr. Burgo. But it found a hostile

work environment based on age in the many months leading to Mr. Burgo walking out of the dealership on June 22, 2020. Mr. Burgo correctly points out most of his alleged compensatory harm is addressed by the jury verdict and the same effort would likely have been necessary even if he did not pursue the discrimination claim. But the Supreme Court in *Hensley* recognized the need to consider the work leading to a successful theory as opposed to the unsuccessful theory. We must deduct some percentage of the requested hourly fees because Mr. Burgo did not persuade the jury Boulevard fired him. He could not proceed on his disparate treatment theory of age discrimination.

We studied the Gold Law firm's submitted time records. The records confirm efforts in early April 2024 to prepare for the cross-examination of Boulevard agents Sadusky, Roa, Stuhl, and Rumpa who we expected to testify principally (if not solely) about what happened at the June 22, 2020 Culture Club Meeting. Mr. Burgo's counsel reported multiple entries involving their anticipated cross-examination. Boulevard does not offer a basis for its blanket objection as to these specific hours. We also recognize Mr. Burgo and Gary Barbera testified about what happened at the June 22, 2020 Meeting. Mr. Burgo also testified about his post-departure emails. Preparing for this evidence is not compensable but we need specific objections. We are also aware Mr. Burgo's counsel did not limit the cross-examination concerns only to what happened on June 22, 2020.

Boulevard posits a broad objection to paying for lawyer time invested in the age discrimination claim. Mr. Burgo responds demonstrating how counsel's efforts are interrelated and his counsel needed to prove age discrimination as part of both claims. We estimate the time billed to the examinations of witnesses (including Mr. Burgo and Gary Barbera) expected to swear as to what happened during the June 22, 2020 meeting.[40] In balancing these concerns, we deduct four percent (4%) from the reasonable fee to account for Mr. Burgo not persuading the jury as to his

departure on June 22, 2020. The jury found Boulevard did not fire him after hearing testimony on the meeting and emails after the meeting. But the fact development on these issues is a small portion of the work effort.

> **B.      We overrule Boulevard's objections on the reasonableness of the fees.**

Boulevard challenges specific time entries of Attorneys Farrell and Rieser on conclusory grounds like "excessive", "block billing" or "unnecessary" given others could have performed the services. It also seemingly questions a billing method of .67 hours for undescribed reasons. We studied the detailed time records and Boulevard's identified objections. Boulevard thoughtfully does not challenge the reasonable hourly rates supported by several fee affidavits. We do not penalize Mr. Burgo's counsel for billing with detailed entries. We overrule Boulevard's objections to the fees.

Mr. Burgo, as the party seeking attorney's fees, "has the burden to prove that [his] request … is reasonable" by submitting evidence supporting the hours worked and rates claimed.[41] "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."[42] We have "a positive and affirmative function in the fee fixing process, not merely a passive role" and "[i]n calculating the hours reasonably expended, [we] should 'review the time charged, decide whether the hours set out were reasonably expended for each of particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[43] In calculating the lodestar, we may not award less in fees than requested unless the opposing party makes specific objections to the fee request.[44]

Our discretion in awarding attorney's fees in fee-shifting statutes "includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously

excessive.'"[45] Time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."[46] Our Court of Appeals defines the requisite degree of specificity required of a party seeking attorney's fees as "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."[47]

Time entries such as "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses" are sufficiently specific.[48] Our Court of Appeals found entries such as "att[entio]n to papers" and "att[entio]n to status" without indicating "what 'papers' or 'status'" to which the attorney attended, and entries such as "e-mails," "conference call," "correspondence" and "review papers" are insufficient to determine if the hours claimed are unreasonable for the work performed.[49]

We are permitted to award time for block billing – "the practice of recording multiple tasks in one, non-itemized entry" – "so long as 'there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.'"[50] Mr. Burgo's counsel identified the tasks in their daily entries. Each offers a reasonable correlation between the tasks and the time spent on the tasks. We also are aware of some time in deposition (e.g. Mr. Roa's seventy-five minute deposition) presented in the daily entry. We do not favor block billing; it allows too much room for ambiguity. But Boulevard does not meet its burden to show the itemized tasks are improperly billed.

We are not persuaded by Boulevard's conclusory challenges to "excessive" time. We address its concern with recovery of fees incurred solely on the June 22, 2020 meeting events. But

we have no basis to second-guess time entries necessary to represent Mr. Burgo's interests consistent with the lawyers' professional obligations. Boulevard retained experienced federal trial lawyers. Mr. Burgo's experienced counsel needed to prepare and review substantial materials. We studied the challenged entries. Counsel need to prepare and depose witnesses. They need to answer motions. They need to study the Law. We find no basis to further deduct fees based on the descriptions. We find no "padding" of the time in the challenged entries.

We also find no basis to second guess the lawyers' use of professional and administrative time. The time entries describe work which can fairly be described as requiring law-trained experience such as drafting emails to experienced opposing counsel. We hesitate to penalize lawyers for doing their jobs rather than asking administrative personnel to communicate with opposing counsel and the Court.

And Boulevard offers no basis to challenge a billing at .67 hours rather than in six-minute increments. The lawyers define the tasks. We readily understand what they are doing and for how long. Boulevard offers no reason to disallow these billing entries other than being different in time character than others.

    **C.**    **We overrule the objections to the requested costs other than the hotel stay.**

Boulevard objects to a variety of requested costs. We reviewed Mr. Burgo's responses. He identifies specific reasons for his costs. But he offers no basis to reimburse for a hotel room for two nights during trial for his lawyer whose office is approximately twelve blocks from the Courthouse.

Boulevard objects to fees and expenses related to Damages Expert Andrew Verzilli's deposition transcript, preparation for testimony, and expert fees. We overrule this objection. Mr. Verzilli testified as to damages arising from age discrimination. He proffered a damages

calculation based on the interrelated nature of the theories as demonstrated by the ample evidence. The jury awarded compensatory damages arising from age discrimination.

Boulevard objects on conclusory general basis to printing, subpoena and service fees upon the Commonwealth, and binding costs. Mr. Burgo provides specific grounds as his needs for the subpoenas from the Commonwealth. The Commonwealth sets the costs schedule. Mr. Burgo details the reason for each of his binding and photocopying costs. We are again not going to preclude counsel from obtaining the information they need to represent their clients on Summary Judgment. We overrule Boulevard's objections to these costs.

We overrule Boulevard's objections to the costs for subpoena service and deposition transcript of identified Boulevard witness Mr. Rumpa. Mr. Burgo needed to depose an identified witness on the overlapping age discrimination theories. Mr. Burgo needed to answer summary judgment.[51] Mr. Burgo defeated summary judgment on both theories as we found genuinely disputed issues of material fact. We are not penalizing Mr. Burgo's counsel for deposing a witness necessary to fulfill obligations to Mr. Burgo and the Court.

But we are not similarly persuaded as to the request for a hotel room for two nights during trial closer to our Courthouse.[52] Mr. Burgo retained Philadelphia lawyers to represent him in this Philadelphia Courthouse. The Philadelphia lawyer pays rent for an office approximately twelve blocks from the Courthouse. He now seeks reimbursement for his decision to stay at a hotel even closer to the Courthouse. We are not persuaded by Mr. Burgo's counsel's reliance on cases where counsel seeking reimbursement for out-of-town hotel stays with witnesses out of town. Mr. Burgo's counsel instead seeks reimbursement so he has the convenience of being slightly closer to the Courthouse for trial. We presume his law firm pays rent at a location approximately twelve

blocks away. We find no basis to reimburse Mr. Burgo's counsel for his choice to stay in a hotel room during trial for two nights.

We otherwise find the costs are appropriate and must be reimbursed.

### III.        Conclusion

Mr. Burgo prevailed on his age discrimination claim relating to a hostile work environment at Boulevard Autogroup from 2018 until his departure on June 22, 2020. He adduced ample evidence of repeated age-based comments. The jury found he proved age discrimination through a hostile work environment but not based on a disparate treatment theory. But almost all the facts related to both claims. Mr. Burgo now seeks recovery of reasonable attorney's fees and costs after prevailing on his age discrimination through a hostile work environment. He presents detailed billing records. His former employer objects to the full amount of fees and certain limited billing entries and costs. We studied the records and objections. We sustain Boulevard Autogroup's objections to the full amount of the requested fees and reimbursing for costs of a two-night hotel stay for his Philadelphia trial lawyer during trial. We today grant Mr. Burgo's motion in part requiring we separately enter judgment of $952,861.07 in favor of Mr. Burgo representing the jury award of $625,000.01, plus the reasonable attorney's fees of $298.958.06 and reasonable costs of $28,902.

---

[1] ECF No. 109-1 at 4–5.

[2] ECF No. 30-5 at 104.

[3] *See* ECF No. 107-4 at 2; ECF No. 107-6 at 2.

[4] ECF No. 107-4 at 2.

[5] ECF No. 107 at 13.

[6] We later moved the trial back one day to start on April 11, 2024 with the parties' consent. ECF No. 83.

[7] Boulevard does not offer an ability for us to discern the proportion of the Gold Law Firm's time billed preparing for Pre-owned Automobile Manager Sadusky's testimony invested on the disparate treatment v. hostile environment age discrimination theories.

[8] ECF No. 27-5 at 23–43.

[9] *Briggs v. Temple Univ.*, 339 F.Supp3d 466, 487 (E.D. Pa. 2018).

[10] ECF No. 92.

[11] *Hensley v. Eckerhart*, 461 U.S 424, 433 (1983); *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stetson*, 465 U.S. 886, 897 (1994)).

[12] 29 U.S.C. § 216(b); 29 U.S.C. § 626(b).

[13] ECF No. 108 at 9.

[14] ECF No. 92.

[15] *Id.* at 1.

[16] ECF No. 108 at 9.

[17] *Compare* Age Discrimination in Employment Act, 29 U.S.C. §§ 621-623 *with* Pennsylvania Human Relations Act, 43 P.S. §951.

[18] *See Watcher v. Pottsville Area Emergency Med. Serv.*, 559 F. Supp 2d 516 (W.D. Pa. 2008), *cited with approval in Hoffmann v. Compassus*, No. 18-0776, 2019 WL 1781413 (E.D. Pa. Apr. 23, 2019).

[19] *See* 29 U.S.C. § 626(b), *incorporating* 29 U.S.C. § 216(b); *see also Watcher*, 559 F. Supp 2d at 521.

[20] *See* 43 P.S. §962 (c.2) ("If . . . the court . . . finds . . . any unlawful discriminatory practice . . . the court may award attorney fees and costs to the prevailing plaintiff."); *see also Lett v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Local 1594*, No. 19-3170, 2023 WL 2163828 (E.D. Pa. Feb. 22, 2023) (citing *Huyett v. Doug's Family Pharm.*, 160 A.3d 221, 227 (Pa. Super. Ct. 2017) ("The trial court has the *discretion* to award attorney fees when it determines there has been a violation of the PHRA.") (emphasis added)).

[21] *Compare* Age Discrimination in Employment Act, 29 U.S.C. §§ 621-623 *with* Pennsylvania Human Relations Act, 43 P.S. §951.

[22] ECF No. 108 at 11 (citing 461 U.S. 424 (1983)).

[23] *Hensley*, 461 U.S. at 434, 436.

[24] *Id.* at 434.

[25] *Id.*

[26] *Id.* at 435.

[27] *Id.* (footnote omitted).

[28] *Id.* at 440.

[29] No. 19-5369, 2024 WL 3202552 (E.D. Pa. June 25, 2024).

[30] *Id.* at *2.

[31] *Id.*

[32] *Id.*

[33] *Id.* at *4.

[34] *Id.* (citing *McKenna v. City of Philadelphia*, 582 F.3d 447, 457–58 (3d Cir. 2009)).

[35] 598 F. Supp.2d 659 (E.D. Pa. 2009).

[36] *Id.* at 673. We reviewed similar concepts a few years ago in awarding discounted fees in *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019). The jury found the former employee did not prove national origin discrimination but did prove retaliation based on age. We distinguished between the unsuccessful discrimination and successful retaliation claims and found most of the proofs to be interrelated. We discounted the requested fees by four percent to account for efforts related solely to the unsuccessful claim. *Middlebrooks*, 2019 WL 936645 at *14–16.

[37] *McGuffey*, 598 F.Supp.2d at 673–74.

[38] *Id.* at 674.

[39] *Id.* at 675.

[40] For example, we deduce Attorney Farrell spent three hours preparing for and taking Sales Manager Roa's deposition. This $1,245 figure is .399% of the fees Mr. Burgo seeks. We also recognize the time preparing the cross examinations of Boulevard witnesses expected to testify only as to the June 22, 2020 Culture Club Meeting.

[41] *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) (quoting *Rode,* 892 F.2d at 1183).

[42] *United States ex rel. Palmer v. C&D Technologies, Inc*., 897 F.3d 128, 139 (3d Cir. 2018) (quoting *Rode*, 892 F.2d at 1183)).

[43] *Clemens*, 903 F.3d at 400 (citations omitted).

[44] *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211 (3d Cir. 2000).

[45] *Clemens*, 903 F.3d at 398 (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).

[46] *Id.* at 401 (quoting *Washington v. Phila. Cty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996)).

[47] *Washington*, 89 F.3d at 1037–38 (quoting *Rode*, 892 F.2d at 1190).

[48] *Rode*, 892 F.2d at 1191 n.13; *see also McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 671 (E.D. Pa. 2009) (finding challenge to 18.8 hours of billed time described as "Research," "Review research," "Research ADEA," or "Research ERISA" sufficient for the court to determine whether the costs claims were unreasonable for the work performed).

[49] *Tenalfy Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F.App'x 93, 100-01 (3d Cir. 2006) (quoting *Washington*, 89 F.3d at 1037)).

[50] *Pasternack v. Klein*, No. 14-2275, 2017 WL 4642283, at *3 (E.D. Pa. Oct. 17, 2017) (quoting *Hatchett v. City of Phila.*, No. 09-1708, 2010 WL 4054285, at *4 (E.D. Pa. Oct. 15, 2010)).

[51] Mr. Burgo confirms Mr. Rumpa testified about Mr. Barbera's age-based insults during Mr. Rumpa's deposition. *See* ECF No. 30-1 at 22, 25, 26, 27.

[52] Mr. Burgo does not explain how Judge Kenney's decision in *Shin Da Enterprises Inc. v. Yong*, No. 21-3384, 2024 WL 22074 (E.D. Pa. Jan. 2, 2024) requires we award him costs for a hotel room. The prevailing party in *Shin Da Enterprises Inc.* prevailed following a seven-day jury trial. *Id.* at *1. The prevailing party's attorneys sought costs associated with hotel room charges for one

attorney to "spend time working rather than commuting." *Id.* at *5. Judge Kenney granted the requested costs. *Id.* It is not clear to us why Mr. Burgo's Philadelphia-based lawyer working and presumably living near (though not expressly averring their address) our courthouse would require hotel costs.

We are also not persuaded by Judge Fullam's 2001 truncated reasoning granting costs associated with hotel room charges in *Leipzinger v. Township of Falls*. *Leipziger v. Twp. of Falls*, No. 00-1147, 2001 WL 1167488 (E.D. Pa. July 31, 2001). Judge Fullam granted the prevailing party hotel room costs reasoning "the cost of a hotel room is less than what counsel could have charged for the time he otherwise would have spent driving between Philadelphia and his office in New Hope." *Id.* at *1. It is not clear to us billing for commuter travel remains common practice nor is it a reason we would grant costs associated with lodging.

Nothing in our decision today affects The Gold Law Firm's ability to recover its hotel room costs from Mr. Burgo under their fee agreement as warranted.